**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE JAMES MONROE CONDOMINIUM AT NEWPORT, INC., <br><br> Plaintiff, <br><br> v. <br><br> SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 32BJ, <br><br> Defendant, <br><br> with <br><br> JOHN REYES, <br><br> Interested Party. | Civil Action No.: 20-7455 <br><br> **OPINION** |

**CECCHI, District Judge.**

**INTRODUCTION**

This matter comes before the Court on the motion to dismiss the verified complaint and confirm the arbitrator's award (ECF No. 8) (the "Motion") filed by Defendant Service Employees International Union Local 32BJ ("Defendant" or "Union") and interested party John Reyes ("Reyes"). The Defendant seeks to dismiss Plaintiff James Monroe Condominium at Newport Inc.'s ("James Monroe") Complaint as Plaintiff has failed to show that the arbitration award should be vacated pursuant to § 9 of the Federal Arbitration Act ("FAA"). The Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78. Having considered the parties' submissions and for the reasons set forth below, the Court **GRANTS** the Defendant's Motion.

**BACKGROUND AND PROCEDURAL HISTORY**

Defendant James Monroe is a residential condominium in Jersey City, New Jersey. ECF No. 1-1, ¶ 9. Interested Party John Reyes is employed by James Monroe as a concierge in a collective bargaining unit represented by the Union. *Id.* at ¶¶ 12-13. On March 7, 2019, James Monroe discharged Reyes after a video recording review of Reyes's workspace over a six-week period allegedly showed Reyes's minimal performance of his duties, that he spent time preoccupied with social media and mobile video games, that he allowed minor children to help him perform his duties, and that he neglected his video monitoring duties. *Id.* ¶ 14.

Pursuant to the grievance and arbitration provision of the collective bargaining agreement ("CBA"), Local 32BJ filed a grievance challenging Reyes's discharge on the ground that it was not for just cause in violation of Article 13 of the CBA. *Id.* at ¶ 16. After the dismissal was upheld at the first stage of the grievance procedure, the Union advanced the matter to arbitration with the Office of the Contract Arbitrator on August 20, 2019. *Id.* at ¶ 18. The issue presented for determination by Gary Kendellen, the designated arbitrator ("Arbitrator"), was: "Did the Employer have just cause to discharge John Reyes. If not, what shall be the remedy?" *Id.* at ¶ 20, Compl. Ex. A, at 2. A hearing was conducted by the Arbitrator over three days—October 26, 2019, December 16, 2019, and January 16, 2020. *Id.* at 21. On February 14, 2020, Arbitrator Kendellen issued his written Opinion and Award sustaining the grievance filed on behalf of Mr. Reyes and awarding him reinstatement to his former position "with full back pay and benefits." *Id.* at ¶ 27, Compl. Ex. A, 16. Although there were issues with Reyes's job performance, the Arbitrator concluded that discharge was not justified because the Employer had failed to put Reyes on notice that his performance was deficient, his performance was remediable, and his performance did not

warrant summary discharge. Compl. Ex. A, 16. The Arbitrator retained jurisdiction "for purposes of resolving any disputes between the parties regarding the implementation of this Award." *Id.*

On May 8, 2020, James Monroe commenced this action in New Jersey Superior Court, Hudson County. The Complaint includes two counts, both for vacatur of the arbitration award pursuant to N.J.S.A. 2A:24-7 and -8, the first count seeking vacatur with regard to the remedy of reinstatement, the second with regard to calculation of backpay. ECF No. 1-1, ¶¶ 39-49. On June 18, 2020, the Union removed the action to this Court, citing its jurisdiction pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. ECF No. 1, ¶ 12. On May 8, 2020, Plaintiff James Monroe filed with its Complaint a memorandum of law, ECF No. 1-1, which the Court considers, along with Plaintiff's responsive brief, stylized as a reply (ECF No. 13), and Defendant's Reply (ECF No. 16).

**LEGAL STANDARD**

**A. Motion to Confirm Arbitration Award**

"It is rare ... to disturb an arbitration award." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013). "Indeed, '[t]here is a strong presumption under the Federal Arbitration Act [ (the "FAA") ], 9 U.S.C. § 1 *et seq.*, in favor of enforcing arbitration awards.'" *Benhenni v. Bayesian Efficient Strategic Trading, LLC*, No. 15-8511, 2016 WL 5660461, at *5 (D.N.J. Sept. 29, 2016) (alteration in original) (citations omitted), *aff'd*, 692 F. App'x 94 (3d Cir. 2017).

"So, 'mindful of the strong federal policy in favor of commercial arbitration, [the Third Circuit] begin[s] with the presumption that the award is enforceable.'" *Id.* (alterations in original) (citations omitted). "If a dispute-resolution mechanism indeed constitutes arbitration under the FAA, then a district court may vacate it only under exceedingly narrow circumstances." *Dluhos*

*v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (citing 9 U.S.C. § 10). "Specifically, under Section 10 of the FAA, a district court can vacate an award only under one of ... four narrow grounds," *Benhenni*, 2016 WL 5660461, at *6, which include:

> (1) [W]here the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "Thus, '[t]he party seeking to overturn an award bears a heavy burden' given the 'exceptional deference' conferred to arbitration decisions and the 'exceedingly narrow circumstances' provided under Section 10 of the FAA." *Benhenni*, 2016 WL 5660461, at *6 (alteration in original) (citations omitted).

## DISCUSSION

Defendant James Monroe seeks to vacate the Award on three grounds: (1) it is contrary to public policy because it directed Reyes's reinstatement, ECF No. 101, ¶¶ 39-44; (2) the Arbitrator declined to accept Employer evidence of Reyes's alleged post-discharge conduct, *id.* at 45-49; and (3) the Award did not address or provide for an offset of Reyes's interim earnings, if any, and his mitigation of damages in calculating the amount of "full back pay" due him, *id.*

### A. Whether the Arbitrator's Award Violates Public Policy

Plaintiff James Monroe argues that the Arbitrator's reinstatement of Reyes imperils "workplace and resident safety, well-being, and security" and so violates public policy. ECF No. 1-1, Mem. Of Law, 4. More specifically, Plaintiff contends that reinstatement of Reyes violates a public policy of child safety. ECF No. 16, 2. Arbitration awards rendered pursuant to collective bargaining agreements can be vacated when such awards violate public policy. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). However, the public policy "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 381 (3d Cir. 1995) (quoting *W.R. Grace & Co. 759*, 461 U.S. at 766.)). To prevail on a public policy argument, there is a two-part analysis. First, a public policy must exist, and second it must be established that the facts, as found by the arbitrator, "*require* [the employee's] discharge for . . . fulfillment" of the public policy. *U.S. Postal Service v. Nat'l Assoc. of Letter Carriers,* 839 F.2d 146, 150 (3d Cir. 1989) (emphasis in original). Plaintiff fails to establish either that its concerns amount to more than considerations of general public interest or that to achieve the goals of public and child safety, Reyes must be discharged.

James Monroe has not identified any positive law, including statutes, regulations, or caselaw, that establishes the existence of the public policy it asserts. James Monroe cites to several cases endorsing the proposition that public policy sufficient to vacate an arbitration award does not have to take the form of positive law. *Exxon Shipping Co. v. Exxon Seamen's Union*, 11 F.3d 1189, 1195-96 (3d Cir. 1993) (rejecting proposition that an arbitration award may only be vacated on public policy grounds when the award requires conduct that is prohibited by positive law); *Exxon Corp. v. Local Union 877, Int'l Bhd. of Teamsters*, 980 F. Supp. 752, 768 (D.N.J. 1997) ("a

court need not find a violation of a specific rule . . . or prohibition"). Despite these declarations, these Courts proceeded to identify various sources of positive law that were implicated by reinstatement of an employee by the arbitrator. *See, e.g.*, *Exxon Corp.*, 980 F. Supp. at 767 (in case involving chemical plant operator's use of drugs on the job, "a myriad of regulations from various Governmental agencies concern alcohol and drugs in the workplace [with regard to government contractors]"); *Exxon Shipping Co.*, 11 F.3d at 1195 (in case involving intoxicated seaman on an oil tanker citing regulation providing that "[a] crew member who is intoxicated while on duty is guilty of a crime and is liable for a civil penalty." 33 C.F.R. § 95.055 (1993)); *Iowa Elec. Light and Power Co. v. Local Union 204 of Intern. Broth. Of Elec. Workers*, 834 F.2d 1424, 1426 (8th Cir. 1987) ("enforcement of the award returning [employee] to work would violate public policy of this nation concerning strict compliance with safety regulations at nuclear facilities"). These cases do not stand for the proposition that to establish the existence of a public policy, an employer need not identify *any* positive law implicated by an employee's conduct, only that an employee's conduct need not be directly proscribed by statute, regulation, or caselaw.

James Monroe argues that it should be "permitted to take whatever steps are necessary to ensure the safety, security, and well-being of its residents and facilities," and asserts that "reinstatement of Mr. Reyes would violate these accredited, well-defined, and dominant public policies." ECF No. 1-1, Mem. of Law, 7. But James Monroe does not point to any source of positive law or otherwise supporting the existence of a public policy of workplace and resident safety. *Id.* In its responsive brief, James Monroe argues that the matter is rooted in the public policy of child safety. ECF No. 13, Pl.'s Reply, 4. The only cases James Monroe cites concern entities entrusted with an affirmative duty to ensure child safety, either under a statute or the doctrine of *parens patriae*. For example, *Porter v. Ascension Parish School Board*, 301 F. Supp.

2d. 576 (M.D. Louisiana 2004), involved the suspension and expulsion of public-school students who brought to school a drawing of guns, a box cutter, and writings about death and gangs. The court rejected the students' challenge to the discipline on First, Fourth, Eighth and Fourteenth Amendment grounds, reasoning that the "safety of the children who attend our schools is one of the most important responsibilities that school officials have." 301 F. Supp. 2d at 588. While there is a societal interest in ensuring the well-being of children, James Monroe has not shown that there is a "well-defined" public policy reflected in positive law requiring residential buildings to provide a safe environment for minor residents such that Reyes must be discharged.

James Monroe provides no analysis of how Reyes's discharge would be contrary to, and required by, a public policy. The Arbitrator specifically determined that having tolerated Reyes's conduct for years, James Monroe could remedy Reyes's behavior by instruction and, if necessary, progressive discipline. The Court thus declines to vacate the Arbitrator's award on this basis.

### B. The Arbitrator's Exclusion of Post-Discharge Evidence

James Monroe seeks to invoke Section 10(a)(3) of the FAA which provides that a court may vacate an arbitration award only where the arbitrator was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). ECF No. 13, Pl.'s Reply, 7. Plaintiff alleges that the Arbitrator's refusal to consider evidence showing that after receiving his termination notice on March 7, 2019, Reyes sent a building-wide email to all of its residents "that was inflammatory of Board President Padman Palani," warrants vacatur. ECF No. 1-1, Compl. ¶ 24. While Plaintiff argues that the Arbitrator's refusal to consider evidence of post-termination misconduct constitutes "abuse of discretion and error," not every failure to introduce arguably material evidence constitutes misconduct. The arbitrator's failure "must be one that so affects the rights of a party that . . . he was deprived of a fair hearing." *N.J. Bldg. Laborers Dist.*

7

*Councils Local 325 v. Molfetta Indus. Co.*, 365 F. App'x 347, 350 (3d Cir. 2010) (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.1968), *cert. denied*, 393 U.S. 954, 959 (1968)); *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997). Plaintiff does not appear to cite to case law supporting its asserted "abuse of discretion" or "error of law" standard.

Plaintiff James Monroe states that if the arbitral award is not vacated, that it is free to terminate Reyes's employment immediately upon his reinstatement based on the post-termination misconduct that the Arbitrator opted not to consider, pursuant to *United Food and Consumer Workers Union Local 1776 v. Excel Corporation*, 470 F.3d 143 (3d Cir. 2006). In *Excel*, the Third Circuit determined that an employee must be reinstated pursuant to an initial arbitral award, but that an employer was free to terminate the employee for a second time stemming from a post-termination assault on a security guard not considered in the initial arbitration. 470 F.3d at 149-150. Defendant Union appears to agree that James Monroe has the power to terminate Reyes for his post-termination conduct, but emphasizes that in *Excel*, as would likely occur here, the union filed a second grievance, followed by a second arbitration related to the post-termination assault. In *Excel*, although a second arbitration followed the first because the employee's post-termination conduct was not considered in the first arbitration, James Monroe appears to argue here that the Court should diverge from the *Excel*-sequence of events and instead vacate the Arbitrator's reinstatement. James Monroe fails to consider, however, that the language of Section 10(a)(3) of the FAA provides that a court may vacate an arbitration award only where the arbitrator was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Having failed to show that the Arbitrator's refusal to consider Reyes's post-termination behavior amounted to "misconduct," the Court declines Plaintiff's request to vacate the Award.

### C. The Arbitrator's Failure to Offset His Award for Mitigation Damages

James Monroe asserts that the Arbitrator's "failure to receive any evidence related to Reyes's post-employment mitigation of damages" and to analyze the amount of back pay owed to Reyes is an independent basis for vacating the Award. Pl. Reply Br. at 10. The Union asserts that the Arbitrator failed to receive any mitigation evidence because James Monroe did not proffer it. ECF No. 16, Def.'s Reply, 8. FAA Section 10(a)(4) provides that an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Plaintiff summarizes, "Here, simply put, the Arbitrator's failure to consider or address the Reyes' mitigation of damages . . . commands the vacatur of the Award and the remand of this matter for further proceedings in arbitration to determine the actual amount of back pay owed to Reyes under the Award." ECF No. 13, Pl.'s Reply, 11. Plaintiff fails to explain why this failure to consider mitigation evidence meets the standard set forth in § 10(a)(4).

In its responsive brief, James Monroe queries regarding the Arbitration Award: "Does the term 'full back pay' mean back pay *without* a reduction for interim earnings or mitigation efforts? Or, did the Arbitrator mean that 'full back pay' should be made *with* a reduction for interim earnings and accounting for any mitigation efforts made by Reyes?" *Id.* The parties agree that the Arbitrator retained jurisdiction "for purposes of resolving any disputes between the parties regarding the implementation of this Award." *Id.*; ECF No. 16, Def.'s Reply, 9. The parties also agree that this language covers any dispute regarding calculation and amount of back pay due. The Union states that "[i]f such a dispute arises [regarding calculation of back pay], James Monroe will have the opportunity to argue to the Arbitrator that, notwithstanding the Award's failure to require offset, interim earnings and mitigation should be considered in calculating the back pay due." ECF

9

No. 16, Def.'s Reply 10. Because James Monroe has not established that the Arbitrator's failure to consider mitigation evidence meets the standard set forth in § 10(a)(4) and the parties agree that the Arbitrator retains jurisdiction to resolve any pending questions regarding mitigation of back pay, the Court declines to vacate the Arbitrator's award.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion to dismiss the verified complaint and confirm the arbitration award (ECF No. 8). Plaintiff's Complaint (ECF No. 1) is **DISMISSED**. An appropriate Order accompanies this opinion.

**DATE**: February 23, 2021

CLAIRE C. CECCHI, U.S.D.J.